Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH NAGLICH, | Case No. '20 CV1803 GPC AGS |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| PFENEX INC., JASON GRENFELL-GARDNER, EVERT B. SCHIMMELPENNINK, PHILLIP M. SCHNEIDER, ROBIN D. CAMPBELL, MAGDA MARQUET, LORIANNE MASUOKA, and JOHN M. TAYLOR, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Elizabeth Naglich ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1. Plaintiff brings this action against Pfenex Inc. ("Pfenex" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Pfenex will be acquired by Ligand Pharmaceuticals Incorporated ("Ligand"), through Ligand's wholly-owned subsidiary Pelican Acquisition Sub, Inc. ("Acquisition Sub") (the "Proposed Transaction").

2. On August 10, 2020, Pfenex and Ligand issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 10, 2020 (the "Merger Agreement") to sell Pfenex to Ligand. Under the terms of the Merger Agreement, each Pfenex stockholder will receive, for each Pfenex share they own: (i) $12.00 per in cash, and (ii) one contingent value right ("CVR") representing the right to receive $2.00 in cash upon the achievement of a predefined regulatory milestone by December 31, 2021 (together, the "Offer Price").

3. Pursuant to the Merger Agreement, Acquisition Sub commenced the Tender Offer on August 31, 2020. The Tender Offer is scheduled to expire at midnight (New York City time) at the end of the day on Tuesday, September 29, 2020. The Proposed Transaction is valued at approximately $3.85 billion.

4. On August 31, 2020, Pfenex filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement, which recommends that Pfenex stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Pfenex management's financial projections, relied upon by the Company's financial advisor, William Blair & Company, L.L.C. ("William Blair"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by William Blair; (iii) the

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

background of the Proposed Transaction; and (iv) William Blair's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

5. In short, the Proposed Transaction will unlawfully divest Pfenex's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Pfenex is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**PARTIES**

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Pfenex.

10. Defendant Pfenex is a Delaware corporation with its principal executive offices located at 10790 Roselle Street, San Diego, California 92121. Pfenex is a development and licensing biotechnology company. Pfenex's common stock is traded on the New York Stock Exchange American under the ticker symbol "PFNX."

11. Defendant Jason Grenfell-Gardner ("Grenfell-Gardner") serves as Chairman of the Board and has been a director of the Company since 2017.

12. Defendant Evert B. Schimmelpennink ("Schimmelpennink") has served as Chief Executive Officer ("CEO"), President, Secretary, and a director of the Company since August 2017.

13. Defendant Phillip M. Schneider ("Schneider") has been a director of the Company since 2014.

14. Defendant Robin D. Campbell ("Campbell") has been a director of the Company since 2014.

15. Defendant Magda Marquet ("Marquet") has been a director of the Company since 2019.

16. Defendant Lorianne Masuoka ("Masuoka") has been a director of the Company since 2019.

17. Defendant John M. Taylor ("Taylor") has been a director of the Company since 2015.

18. Defendants identified in paragraphs 11 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Ligand is a Delaware corporation with its principal executive offices located at 3911

Sorrento Valley Boulevard, Suite 110, San Diego, California 92121.  Ligand is a revenue-generating biopharmaceutical company focused on developing or acquiring technologies that help pharmaceutical companies discover and develop medicines.  Ligand employs research technologies such as antibody discovery technologies, structure-based drug design, formulation science and liver targeted pro-drug technologies to assist companies in their work toward securing prescription drug and biologic approvals.  Ligand currently has partnerships and license agreements with over 120 pharmaceutical and biotechnology companies.  Ligand's common stock is traded on the NASDAQ Global Market under the ticker symbol "LGND."

20. Acquisition Sub is a Delaware corporation and wholly owned subsidiary of Ligand.

**SUBSTANTIVE ALLEGATIONS**

**Company Background**

21. Pfenex is a development and licensing biotechnology company.  Pfenex leverages its proprietary protein production platform, Pfenex Expression Technology, to develop next generation and novel protein therapeutics to meaningfully improve existing therapies and create novel therapies for some of the biological targets linked to critical diseases still waiting to successfully be addressed. The Company has extensive experience in protein therapeutic development and its proven platform enables deliberate and rapid candidate selection, fast drug development, and potentially higher success rates for a wide range of complex modalities.  Pfenex aims to leverage existing drug development successes into a broad pipeline that is diversified across multiple assets, including U.S. Food and Drug Administration ("FDA") approved next generation and novel biopharmaceutical products.

22. The Company's products and collaborations include PF743 (JZP-458), which it is developing in collaboration with Jazz Pharmaceuticals plc ("Jazz") for the treatment of acute lymphoblastic leukemia and which commenced a pivotal Phase 2/3 clinical study in December 2019.

Pfenex also has collaborations based on CRM197, a diphtheria toxoid carrier protein used in prophylactic and therapeutic vaccine candidates with Merck & Co., Inc. ("Merck") and Serum Institute of India Private Limited ("SIIPL"). Both Merck and SIIPL have licenses to the Pfenex Expression Technology for the production of CRM197 for use in conjugate vaccine products. Merck's V114, a 15-valent Pneumococcal conjugate vaccine is currently in 15 Phase 3 clinical trials, and SIIPL's Pneumosil, a 10-valent Pneumococcal vaccine designed for the developing world, recently achieved World Health Organization ("WHO") Prequalification allowing the product to be procured by United Nations agencies and Gavi, the Vaccine Alliance. In addition, a Phase 3, randomized, double-blind study to evaluate the immunogenicity, safety and tolerability of Pneumosil in healthy Indian infants has been completed. SIIPL is currently in the process of submitting the data from the Phase 3 trial to the Drug Controller General of India ("DCGI") in support of India marketing authorization.

23.   On August 6, 2020, the Company announced its second quarter 2020 financial results and provided several business updates. With respect to its development and license agreement with Jazz for multiple hematologic oncology products including PF743 (JZP-458), Pfenex announced:

> Jazz has received fast track designation for PF743, and recently stated that it anticipates the filing of the biologics license application as early as the fourth quarter of 2020. The Phase 3 clinical trial, consisting of approximately 100 patients with a planned interim analysis at approximately 50 patients, is being conducted in collaboration with Children's Oncology Group.
>
> Under the terms of the development and license agreement, Pfenex is eligible to receive an aggregate total of up to $224.5 million in development and sales milestone fees. At June 30, 2020, $162.5 million of development and sales milestones are still eligible to be received by Pfenex, including up to $3.5 million for development milestones, $34.0 million in regulatory milestones and $125 million in sales milestones. Pfenex is eligible to receive tiered royalties based on worldwide sales of any products resulting from the collaboration.

In addition, with respect to CRM197, the Company announced:

Merck is using CRM197 produced by Pfenex Expression Technology in its V114 (PCV-15) vaccine, an investigational 15-valent conjugate vaccine for the prevention of pneumococcal disease, currently in 17 Phase 3 studies. In June, Merck announced positive results from two of the initial Phase 3 studies evaluating the safety, tolerability and immunogenicity of V114, which were published via the International Symposium on Pneumococci and Pneumococcal Diseases online digital library. Merck also announced its plans to continue to work with the FDA and other regulatory authorities around the world on filing plans for licensure of this vaccine as additional data from the Phase 3 programs become available. If approved, V114 is expected to be positioned as a key product in the pneumococcal vaccine market. In accordance with its license agreement, Pfenex is eligible to receive regulatory milestones and royalties on the net sales of V114.

SII is also using CRM197 produced by Pfenex Expression Technology in multiple programs. SII developed a 10-valent pneumococcal conjugate vaccine, Pneumosil, which achieved World Health Organization prequalification in the fourth quarter of 2019. SII recently announced a new arrangement with the United Nations International Children's Fund (UNICEF) to supply ten million doses of Pneumosil, annually for a period of ten years. The supply arrangement may allow low- and middle-income countries to access the drug under UNICEF's Vaccine Alliance's Advance Market Commitment. Additionally, SII received Indian marketing authorization for Pneumosil in July 2020, enabling commercialization of the product in this key market. In accordance with its license agreement, Pfenex is eligible to receive royalties on net sales.

**The Proposed Transaction**

24.     On August 10, 2020, Pfenex and Ligand issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

SAN DIEGO--Ligand Pharmaceuticals Incorporated (NASDAQ: LGND) and Pfenex Inc. (NYSE American: PFNX) today announced the signing of a definitive agreement for Ligand to acquire all outstanding shares of Pfenex for $12.00 per share in cash or $438 million in equity value on a fully diluted basis. In addition, Ligand will pay $2.00 per share or $78 million as a Contingent Value Right (CVR) in the event a predefined regulatory milestone is achieved by December 31, 2021, for a total transaction value of up to $516 million. The closing of this transaction is subject to customary conditions and is expected to occur in the fourth quarter.

Pfenex is a development and licensing biotechnology company focused on leveraging its proprietary Pfenex Expression Technology®, which offers a robust, validated, cost-effective and scalable approach to recombinant protein production, and is especially well-suited for complex, large-scale protein production that cannot be made by more traditional systems. The technology is currently out-licensed for numerous commercial and development-stage programs, as well as used by Pfenex in developing an early stage product pipeline and nanobody discovery and development capability.

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The versatile platform has demonstrated consistent success in the production of enzymes, peptides, antibody derivatives and engineered non-natural proteins. Partners seek the Pfenex technology as it can contribute significant value to biopharmaceutical development programs by reducing development timelines and costs for manufacturing human therapeutics and vaccines.

Pfenex's expertise in the expression of complex proteins is highly complementary to Ligand's industry-leading antibody and drug enabling technologies, building a comprehensive discovery and early stage platform.

The acquisition of Pfenex is expected to contribute a number of strategic benefits to Ligand:

- Access to a proprietary, protein expression technology that is utilized in various commercial and development-stage biopharmaceutical programs.

- Versatile operating business that is focused on licensing and generating royalty revenue from partners.

- Profitable, cash-flow positive business that is projected to be accretive to Ligand's adjusted diluted EPS beginning in 2021.

- Numerous major collaborations with leading pharmaceutical companies for treatments and vaccines, including Merck, Jazz Pharmaceuticals, Serum Institute of India and Alvogen.

- Outlook for numerous additional licenses to be potentially secured over the next few years by Ligand leveraging the Pfenex technology.

- Validated discovery platform technology driving a deep pipeline of next generation product candidates for future internal and external development.

- State-of-the-art process development operation located in San Diego with scalable equipment and engineering capabilities designed to serve the world's largest pharmaceutical companies.

"Pfenex is an ideal strategic, business and cultural fit with Ligand. The acquisition holds potential to have a significantly positive scientific and financial impact on our business in the short and long term, similar to how our Captisol and OmniAb acquisitions have played out," said John Higgins, Chief Executive Officer of Ligand. "Pfenex will add an established, proven protein expression platform to Ligand that is highly complementary to our essential, proprietary drug discovery and formulation technologies. We are confident we will be able to quickly and efficiently grow the Pfenex business, along with our core existing technologies. It has been a very positive experience working with the Pfenex executive leadership and senior scientists while

we put this deal together.  We look forward to welcoming the talented Pfenex team to Ligand."

"The Ligand-Pfenex combination is an excellent strategic and cultural fit, presenting a unique opportunity to leverage the complementary strengths of robust platforms and rich pipelines, we expect it to position us even better to deliver on our joint vision to develop therapeutics that provide patients a better future," said Eef Schimmelpennink, Chief Executive Officer, Pfenex.  "I want to recognize and thank the Pfenex team, and express deep gratitude to each of you for your many contributions over the years, which have enabled us to reach this milestone."

**Financial Outlook**

Ligand will provide a detailed outlook for the Pfenex business and financial contribution after the transaction has closed.  At this time, Ligand expects the transaction will be modestly dilutive to 2020 adjusted diluted EPS, will provide $0.10 to $0.30 of adjusted diluted EPS accretion in 2021, and will provide significant annual adjusted diluted EPS accretion thereafter with the current forecast of $0.60 to $0.80 in 2022 and $1.25 to $1.50 in 2023.

**Transaction Terms**

Under the terms of the merger agreement, Ligand will commence a tender offer to acquire all of the outstanding shares of Pfenex common stock for $12.00 per share, or $438 million upfront in cash.  This represents a 57% premium to the closing price of Pfenex's stock on August 10, 2020. Ligand will also pay holders of Pfenex common stock a price of $2.00 per share, or $78 million, as a Contingent Value Right in the event a predefined regulatory milestone is achieved by December 31, 2021.  The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Pfenex common stock, and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.  The transaction is expected to close in the fourth quarter of 2020 and be funded by Ligand with cash on hand.

**Insiders' Interests in the Proposed Transaction**

28.     Pfenex insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Pfenex.

29. Company insiders stand to reap substantial financial benefits for securing the deal with Ligand. The following table sets forth the cash payments the Company's executive officers and directors will receive in connection with tendering of their shares in the Tender Offer:

| Name | Number of Shares Owned (1) | Cash Consideration for Owned Shares ($)(2) | Cash Consideration for CVR ($) (3) |
|---|---|---|---|
| *Non-Employee Directors* | | | |
| Jason Grenfell-Gardner | 10,000 | 120,000 | 20,000 |
| Magda Marquet, Ph.D. | — | — | — |
| John M. Taylor | — | — | — |
| Robin D Campbell, Ph.D. (4) | 5,000 | 60,000 | 10,000 |
| Lorianne Masuoka | — | — | — |
| Phillip Schneider (5) | 11,000 | 132,000 | 22,000 |
| *Executive Officers* | | | |
| Evert B. Schimmelpennink* | 26,658 | 319,896 | 53,316 |
| Patrick Lucy | 90,430 | 1,085,160 | 180,860 |
| Martin Brenner | — | — | — |
| Shawn Scranton | — | — | — |

30. Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options will be converted into the right to receive cash payments, as set forth in the following table:

| Name | Number of Shares Subject to Vested Portion of Company Option (1) | Value of Vested Portion of Company Options ($)(2) | Number of Shares Subject to Unvested Portion of Company Option (3) | Value of Unvested Portion of Company Options ($)(4) | Total Value ($) |
|---|---|---|---|---|---|
| *Non-Employee Directors* | | | | | |
| Jason Grenfell-Gardner | 61,000 | 513,020 | 18,000 | 136,260 | 649,280 |
| Magda Marquet, Ph.D. | 25,000 | 237,750 | 18,000 | 136,260 | 374,010 |
| John Taylor | 97,000 | 715,160 | 18,000 | 136,260 | 851,420 |
| Robin D. Campbell, Ph.D. | 92,000 | 706,060 | 18,000 | 136,260 | 842,320 |
| Lorianne Masuoka, M.D. | 25,000 | 201,250 | 18,000 | 136,260 | 337,510 |
| Phillip M. Schneider | 92,000 | 729,660 | 18,000 | 136,260 | 865,920 |
| *Executive Officers* | | | | | |
| Evert B. Schimmelpennink* | 496,915 | 5,181,987 | 573,147 | 4,287,321 | 9,469,308 |
| Patrick K. Lucy | 246,691 | 1,658,305 | 126,174 | 913,368 | 2,571,673 |
| Martin Brenner, DVM, Ph.D | 29,042 | 227,979 | 93,958 | 543,230 | 771,209 |
| Shawn Scranton, PharmD | 44,333 | 407,549 | 110,667 | 685,760 | 1,093,309 |

31. Further, if they are terminated in connection with the Proposed Transaction, Pfenex's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($) (1) | Equity ($) (2) | Perquisites/ Benefits ($) (3) | Total ($)(4) |
|---|---|---|---|---|
| Evert B. Schimmelpennink | 1,967,360 | 4,287,321 | 48,048 | 6,302,729 |
| Patrick K. Lucy | 840,063 | 913,368 | 33,345 | 1,786,776 |
| Martin Brenner, DVM, Ph.D | 783,216 | 543,230 | 33,072 | 1,359,518 |
| Shawn Scranton, Pharm D | 735,210 | 685,760 | 33,969 | 1,454,939 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Recommendation Statement Contains Material Misstatements or Omissions**

32.     The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Pfenex's stockholders.  The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

33.     Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Pfenex management's financial projections, relied upon by the Company's financial advisor William Blair in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by William Blair; (iii) the background of the Proposed Transaction; and (iv) William Blair's and Company insiders' potential conflicts of interest.

*Material Omissions Concerning Pfenex's Financial Projections*

34.     The Recommendation Statement omits material information regarding the Company's financial projections provided by Pfenex's management and relied upon by William Blair for its financial analyses.

35.     For example, in connection with rendering its fairness opinion, William Blair examined or discussed, among other things:

> certain internal business operating and financial information and risk-adjusted forecasts of the Company for the fiscal years ending December 31, 2020 through December 31, 2038, including certain estimates as to potentially realizable net operating loss carryforwards expected to be utilized by the Company, prepared by the senior management of the Company and the final versions of which were provided to William Blair on August 4, 2020 (the "**Forecasts**")[.]

Recommendation Statement at 32 (emphasis in original). The Recommendation Statement, however, fails to set forth: (i) the specific risk adjustments that were made to the Company's projections, as well as the un-risked projections, so Pfenex stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections; and (ii) the certain estimates as to potentially realizable net operating loss carryforwards expected to be utilized by the Company, prepared by the senior management of the Company.

36. Additionally, the Recommendation Statement fails to disclose the Company's projected after-tax unlevered free cash flows ("UFCFs") for the fiscal years ending December 31, 2020 through December 31, 2038 as well as the underlying line items used to calculate the Company's UFCFs.

37. Moreover, the Recommendation Statement fails to disclose the Company's projections reviewed by the Board at its May 15, 2020 and June 24, 2020 Board meetings as well as the specific assumptions underlying these projections.

38. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Pfenex's Financial Advisor" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning William Blair's Financial Analyses*

39. The Recommendation Statement describes William Blair's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of William Blair's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pfenex's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on William Blair's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

40. With respect to William Blair's *Selected Publicly Traded Companies Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

41. With respect to William Blair's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples and financial metrics for each of the transactions analyzed.

42. With respect to William Blair's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Company's projected UFCFs for the fiscal years ending December 31, 2020 through December 31, 2038; (ii) the terminal year metric William Blair applied a perpetuity growth rate of (80.0%) to, in order to derive the terminal value in the analysis; (iii) quantification of the terminal year metric and terminal value; (iv) quantification of the present value of the potential tax savings expected to result from the utilization of the Company's federal net operating losses; and (v) quantification of the inputs and assumptions underlying the discount rate range of 11.5% to 13.5%.

43. Additionally, the Recommendation Statement sets forth that in connection with rendering its fairness opinion, William Blair examined or discussed, among other things, "the probability of achievement of the CVR Payment Milestone on March 31, 2021 (the "**CVR Probabilities**"), prepared by the senior management of the Company and provided to William Blair on August 4, 2020." *Id*. at 32 (emphasis in original). The Recommendation Statement fails, however, to disclose the "CVR Probabilities" prepared by the senior management of the Company and provided to William Blair on August 4, 2020.

44. The omission of this information renders the statements in the "Opinion of Pfenex's Financial Advisor" and "Projected Financial Information" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

- 13 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

45. The Recommendation Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

46. The Recommendation Statement sets forth that "[o]n April 2, 2020, Pfenex, as a result of a conflict of interest with its existing financial advisor and in consultation with and at the direction of the Board, engaged a second financial advisor to assist with its existing strategy of exploring potential acquisitions." *Id*. at 16. The Recommendation Statement fails to disclose the specific conflict of interest Pfenex had with its existing financial advisor.

47. The omission of this information renders the statements in the "Background of the Merger" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning William Blair's and Company Insiders' Potential Conflicts of Interest***

48. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by William Blair.

49. The Recommendation Statement sets forth that William Blair holds a minority equity position in both Pfenex and Ligand. The Recommendation Statement fails, however, to disclose and quantify the current equity position that William Blair holds in both Pfenex and Ligand.

50. Additionally, the Recommendation Statement fails to disclose the amount of fees William Blair has received for the past services it has performed for Pfenex.

51. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

52. The Recommendation Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

- 14 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

53. The Recommendation Statement sets forth:

> [A]s of the date of this Schedule 14D-9, there have occurred preliminary discussions between certain members of Pfenex's current management and representatives of Ligand or its affiliates with respect to such agreements, arrangements, or understandings. Although it is possible that certain other members of Pfenex's current management team will enter into agreements, arrangements, or understandings with Ligand or its affiliates regarding employment with, and the right to purchase or participate in the equity of, Ligand or one of its subsidiaries, including the Surviving Corporation, as of the date of this Schedule 14D-9, there can be no assurance that any parties will reach any such agreement.

*Id.* at 13. The Recommendation Statement fails, however, to disclose the details of all employment and retention-related discussions and negotiations that occurred between Ligand and Pfenex executive officers and directors, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of Ligand's proposals or indications of interest mentioned management retention.

54. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Pfenex's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

55. The omission of this information renders the statements in the "William Blair," "Opinion of Pfenex's Financial Advisor," "Past Contracts, Transactions, Negotiations and Agreements," "Arrangements with Directors and Executive Officers of Pfenex," and "Background of the Merger" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

56. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to

the expiration of the Tender Offer, Plaintiff and the other Pfenex stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

57. Plaintiff repeats all previous allegations as if set forth in full.

58. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

59. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender her shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

60. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender her shares or seek appraisal.

## COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

61. Plaintiff repeats all previous allegations as if set forth in full.

62. The Individual Defendants acted as controlling persons of Pfenex within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Pfenex and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

63. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

65. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

66. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Pfenex, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: September 14, 2020

**WEISSLAW LLP**

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
        -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*